ON APPLICATION FOR REHEARING
This Court's original opinion of January 13, 1989, is withdrawn and the following is substituted therefor:
On May 14, 1982, Attiah and Zeinab Sabry entered into a sales contract with Burton and Kathleen Olshan in which the Sabrys agreed to purchase a 24-unit apartment building in Birmingham, Alabama. Donald Zegarelli, an agent for Lowder Realty Company, negotiated this transaction. In connection with the purchase, the Sabrys assumed a $64,514.28 first mortgage and executed a promissory note, secured by a second mortgage, in the amount of $155,485.72. The Sabrys also executed two additional promissory notes to the Olshans, one for $20,000 and another for $10,000. After purchasing the property, the Sabrys discovered that Zegarelli had failed to disclose certain defects in the apartments (e.g., the roof leaked in some of the units, causing the ceilings to sag and the floors to buckle; other units had fire damage and electrical problems). In addition, the rent *Page 1241 
rolls[1] produced by Zegarelli prior to the purchase were inflated and the rental income was insufficient to cover the mortgage payments. Therefore, the Sabrys decided to sell the apartment building, less than 60 days after purchasing it. The Sabrys contacted Zegarelli, and signed a listing contract to sell the building. Within a few days, Zegarelli contacted the Sabrys and presented an offer for $290,000 from Larry Herring. The Sabrys accepted the offer, which called for Herring to put up $1,000 earnest money and $9,000 at closing. After signing the sales contract, the Sabrys consulted an attorney, George Stuart, who advised them to cancel that contract. The contract was cancelled; however, an agreement to close was ultimately reached and the sales price was reduced from $290,000 to $285,000. In addition, Lowder agreed to reduce its sales commission from $20,300 to $14,000, in exchange for a "general release" that, allegedly, released Lowder and its agents from any and all liability to the Sabrys.[2] In connection with the purchase, Herring assumed the first and second mortgages on the property and executed two promissory notes to the Sabrys, one for $47,123.54 and another for $10,000. The Sabrys were unable to pay Lowder's $14,000 sales commission. In order to facilitate the closing, the Olshans advanced $3,000 to Lowder on behalf of the Sabrys and then took a $3,000 "top interest" note in the $47,123.54 note from Herring to the Sabrys. In addition, Lowder agreed to accept a $7,000 note from the Sabrys for the remainder of its sales commission, payable one year from the date of the closing. Shortly after purchasing the apartment building, Herring resold it and defaulted on the $47,123.54 and $10,000 promissory notes to the Sabrys.
The Olshans filed suit against the Sabrys, claiming $6,489.86 as the balance due on the $10,000 promissory note given to the Olshans at the closing of the first sale. Lowder also brought suit against the Sabrys on the $7,000 promissory note given at the closing of the second sale to cover the balance of Lowder's sales commission. The Sabrys asserted as a defense that both the Olshans' loan and Lowder's loan fell within the purview of the Alabama Mini-Code, § 5-19-1 et seq., and that neither the Olshans nor Lowder had complied with the requirements set forth in that section. The Sabrys counterclaimed against Lowder for fraud, alleging that Lowder had misrepresented the creditworthiness of Herring and had failed to investigate and disclose Herring's financial background.
The Sabrys filed a third-party claim against Herring, seeking recovery for breach of contract and fraud. Lowder v. Sabry
(CV-83-6607) and Olshan v. Sabry (CV-83-3839) were consolidated for trial pursuant to the Sabrys' motion to consolidate. Lowder filed the following motion for directed verdict:
 "Mr. Jones: Judge, at this time, at the close of all evidence, the plaintiff, Lowder Realty Company, Incorporated, and 'Dom' Zegarelli as their agent, would move for a directed verdict as to the issue as to whether or not they are required to make the various disclosures and other requisite documents under the mini-code as alleged by the defendant.
 "We contend that it's uncontroverted that there's no evidence as to either of those plaintiffs, that they are actively or otherwise engaged in the regular issuance of consumer loans. And failing that proof from the defendant, we contend that we're entitled to a directed verdict on that issue."
The court granted this motion and the case was submitted to the jury without the defense of the violation of the Alabama Mini-Code. The jury returned the following verdicts: (1) On Lowder's claim for the unpaid balance of $7,000, the jury returned a verdict in favor of the Sabrys against Lowder; (2) on the Sabrys' counterclaim against Lowder, the jury returned a general verdict *Page 1242 
in favor of the Sabrys against Lowder in the amount of $75,000; (3) on the Sabrys' claim against Herring, the jury returned a general verdict in favor of the Sabrys against Herring in the amount of $300,000;[3] and (4) on the Olshans' claim against the Sabrys for the balance due on the $10,000 note ($6,356.74), the jury returned a verdict in favor of the Olshans and against the Sabrys, but only in the amount of $1.00.
Lowder filed a motion for new trial, or alternatively, to alter, amend, or vacate the judgment; for J.N.O.V.; or for remittitur. The trial court denied Lowder's motion. Lowder appeals from the denial of that motion. We affirm.
On appeal, Lowder contends that the verdicts rendered by the jury were inconsistent and were legally and factually irreconcilable. This argument was not raised in the post-trial motion, but was raised for the first time on appeal. Therefore, we will not consider it. Chatman v. City of Prichard,431 So.2d 532 (Ala. 1983); Smiths Water Authority v. City of Phenix City,436 So.2d 827 (Ala. 1983).
Lowder also contends that "the verdict was not supported by the law or the evidence, in that the . . . Defendants' claims were barred by not less than (2) releases." However, Lowder did not move for a directed verdict on the Sabrys' counterclaim. Having failed to do so, Lowder is precluded from raising this issue by way of its post-judgment motion. The trial court's denial of the motion was, therefore, proper. See Barnes v.Dale, 530 So.2d 770 (Ala. 1988).
Lowder also argues that a remand pursuant to Hammond v. Cityof Gadsden, 493 So.2d 1374 (Ala. 1986), is required because the trial court failed to make a record of its reasons for refusing to remit the verdict. Since Hammond, we have noted that it was never our intention to automatically remand every case in which excessiveness was at issue. State v. McCurdy Concrete, Inc.,507 So.2d 403 (Ala. 1986). Where the record on appeal is sufficient for this Court to review the excessiveness issue, aHammond remand is not necessary. State v. McCurdy Concrete,Inc., supra. Viewing the evidence most favorably to the Sabrys, as our standard of review requires us to view it, we find ample evidence to support the $75,000.00 judgment. Of the $75,000 awarded, $57,000 was the amount the Sabrys lost as the result of the sale. There is evidence that the rental income received from the apartment building was insufficient to cover the mortgage payments, and that, for the time Mr. Sabry owned the building, he worked both day and night trying to repair it. There was ample evidence in the record for this Court to review the excessiveness issue; therefore, we find that a Hammond
remand is not necessary.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, ADAMS and KENNEDY, JJ., concur.
[1] Black's Law Dictionary (5th ed. 1979) defines "rent roll" as a list of rents payable to a particular person or public body.
[2] Zegarelli, as agent for Lowder, had represented the Olshans, as sellers, when they sold to the Sabrys, in addition to representing the Sabrys, as sellers, in the sale to Herring.
[3] Herring failed to appear for trial and a default judgment was entered against him. Therefore, the only issue for the jury to determine on this claim was the amount of damages.