ON RETURN TO REMAND
McMillan, judge.
This cause was remanded to the trial court for the resolution of two matters: one from the guilt phase and one from the sentencing phase. 588 So.2d 561. The trial court was instructed to make findings of fact regarding the racial composition of the venire and', specifically, the race of those veniremembers who were struck by the State. The trial court was to determine whether a prima facie case of racial discrimination on the part of the State existed and, if so, to require the prosecutor to come forward with reasons for his strikes of black veniremembers. The trial court was then to determine whether those reasons were sufficiently race-neutral. This cause was also remanded for the trial court to enter written findings of fact and conclusions of law as to the aggravating and mitigating circumstances in this ease, pursuant to § 13A-5-47(d), Code of Alabama 1975.
In his order on return to remand, the trial judge determined that 51 people served on the jury venire. Of those, 37 were white and 14 were black. The trial court found that the prosecutor used 10 of his 19 strikes against blacks, striking 5 black males and 5 black females. The trial court further determined that defense counsel used 3 of their 18 strikes against black veniremembers, striking 2 black males and 1 black female. One black male served on the jury. The trial court noted that, after the jury was struck, there were no objections to the composition of the jury, nor was there any mention of this issue until the motion for new trial.
The trial court then determined that the appellant failed to meet his burden of proving a prima facie case of purposeful racial discrimination. In his order, the trial court stated:
“The Court further finds that the defendant who claims a Batson violation bears the initial burden of making a pri-ma facie showing that the prosecution has used its peremptory strikes in a racially discriminatory manner. Further, the defendant must establish relevant facts and circumstances that ‘raise an inference that the prosecutor used his peremptory strikes to exclude venireman [sic] from the petty [sic] jury on account of their race.’ Batson v. Kentucky, [476] U.S. [79] [at] 96, 106 S.Ct. [1712] at 1723 [90 L.Ed.2d 69 (1986)].
“The Court further finds that until the defendant meets this burden, the prosecutor is under no obligation to offer explanations for its peremptory strikes. [Harrell v. State], 555 So.2d 263, 268 (Ala.1989); Robinson v. State, 545 So.2d 828, 832 (Ala.Cr.App.1989).
“The Court further finds that the case of Powers v. Ohio, [499 U.S. 400,] 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991), held that a criminal defendant may object to race-based exclusions of jurors effective through peremptory challenges whether or not the defendant and the excluded juror share the same race.
“The Court further finds that the defendant may not prove his prima facie case solely from the fact that the prosecutor struck one (1) or more blacks from his jury. United States v. Lane, 866 F.2d 103, 106 (4th Cir.1989).
“The Court further finds the defendant must offer some evidence in addition to the striking of blacks that would raise the inferences of discrimination. Ex parte Branch, 526 So.2d 609, 623-24 (Ala.1987).
“The Court further finds that the defendant failed to meet his burden of proving a prima facie showing of purposeful racial discrimination. The defendant provided no relevant circumstances to suggest the prosecutor’s strikes were used in a discriminatory manner.
*729 “The Court further finds the defendant in this case had a fair and impartial public jury trial as guaranteed by the Constitution of the United States and the State of Alabama.”
The trial court did not hold a hearing concerning this matter, but rather made this decision based on the record of the original proceedings. However, because the appellant was unable to present any evidence to support his claim of discrimination, he made a motion for reconsideration, which included such evidence. The trial court denied this motion, but granted the appellant’s motion to supplement the record with his motion for reconsideration and the attachments thereto.
In his motion for reconsideration, the appellant argues “that since being provided with the factual information about the race of the jurors struck by the prosecutor, he has not been given the opportunity to make a prima facie showing in that he had intended to make such a showing at the scheduled hearing.” The appellant’s counsel on appeal pointed out that he did not represent the appellant at his trial and, therefore, that he had no knowledge of the race of the jurors struck prior to receiving the strike list from the trial court, after the case had been remanded.
In the appellant’s motion, he first argues that the number of strikes used by the State against blacks raises an inference of discrimination. Ex parte Williams, 571 So.2d 987 (Ala.1990); Walker v. State, 586 So.2d 49 (Ala.Cr.App.1991); Floyd v. State, 539 So.2d 357 (Ala.Cr.App.1987). The appellant then continues by setting out a number of factors, which were present in his case and which raised an inference of discrimination, such as would satisfy the mandates of Ex parte Branch, 526 So.2d 609 (Ala.1987). The appellant set forth the following factors to support his case:
“11. FACTOR 1: The court must consider any ‘[ejvidence that the jurors in question shared only this one characteristic — their membership in the group — and that in all other respects they were as heterogeneous as the community as a whole.’ Ex parte Branch, 526 So.2d at 662 (citations omitted); see also Ex parte Harrell, 571 So.2d 1270, 1272 (Ala.1990). In this case, the prosecutor struck a heterogeneous group of black people who seemingly had nothing in common but their race. The prosecutor struck both black men and black women;[4] black retired people, a black housewife, and black working people;[5] married black people,[6] single black people,[7] and a separated black person.[8]
“12. FACTOR 2: The court must consider whether there is ‘[a] pattern of strikes against black jurors on the particular venire.’ Id., 526 So.2d at 623. Here the prosecutor struck 10 of the 14, or 71 percent, of the black veniremembers even though blacks constituted only 27 percent of the venire.
“13. FACTOR 3: The court must consider the past conduct of the district attorney in his use of peremptory strikes against black people. Id., 526 So.2d at 623. See also Ex parte Bird and Warner, [594] So.2d [676, 681] (Ala.1991), (citing Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965)). The Colbert County District Attorney, Gary Alverson, and his chief trial assistant, Ron Hudson, have a history and pattern of racially disproportionate and discriminatory exercise of peremptory challenges, including two reversals by the Court of Criminal Appeals based on Bat-son violations within the past month. This court was undoubtedly aware of that history and should have taken it into consideration in determining whether a prima facie case had been established.[9]
“(a) On November 15, 1991, the Alabama Court of Criminal Appeals reversed a rape and kidnapping conviction obtained by the Colbert County District Attorney’s office because it found that the prosecutor had been unable to give race-neutral reasons for his strikes of at least two black veniremembers. Jackson v. State, [594] So.2d [1289, 1294-95] (Ala.Cr.App.1991). The Court found- the reasons given by the prosecutor to be based on unfounded assumptions, not supported by the record, and a type which *730 should have been explored on voir dire. Id. at [1293-95].
“(b) Just two weeks later, the Court of Criminal Appeals reversed a capital murder conviction and death sentence in a Colbert County case. Guthrie v. State, [598] So.2d [1013] (Ala.Cr.App.1991). Here, the Court of Criminal Appeals found that the same prosecutor, the District Attorney of Colbert County, had failed to give race-neutral reasons for his strikes of black veniremembers, finding the reasons given to be unsupported by the record and unexplored by the prosecutor on voir dire. Id. at 1019-20.
“(c) On December 27, 1989, on a remand from the Court of Criminal Appeals, this Court found that the prosecutor[10] had failed to give racially neutral reasons for his strikes of black venire-members in the ease of State v. Jay Cee Vanscoy, Colbert County, CC 86-228_ Upon that finding, this Court granted Mr. Yanscoy’s motion for a mistrial.
“(d) Additionally, at the scheduled hearing Mr. Smith intended to make proof of the prosecutor’s pattern of strikes in other cases through introduction of evidence regarding the race of the veniremembers struck in other cases and testimony about the prosecutor’s practices in this regard_ Mr. Smith would, inter alia, have introduced evidence about the prosecutor’s use of peremptory challenges in a number of other cases tried in Colbert County within the past four years. A summary of that information is included in Appendix B [to appellant’s motion]. As that summary demonstrates, the prosecutor in almost every case has used a disproportionately high percentage of his strikes to eliminate a disproportionately high percentage of black veniremembers. On the the average, he has struck 60 percent of black veniremembers while striking only 32 percent of white veniremembers. In 78 percent of the cases listed,[11] he has struck an average of 73 percent of the black veniremembers while striking only 30 percent of the white veniremembers.
“14. FACTOR 4-' The court is required to consider ‘[t]he type and manner of the state’s attorney’s questions and statements during voir dire, including nothing more than desultory voir dire.’ Ex parte Branch, 526 So.2d at 623. In this capital case, the entire voir dire is contained in only 38 pages of the transcript. Of those 38 pages the defense attorney’s voir dire takes up 13 pages, leaving only 25 pages of voir dire by the prosecution. (R. 93-114; 121-38). The prosecutor’s voir dire consisted primarily of general questions to the panel as a whole with very little follow up. The one exception related to the more individualized voir dire of two panel members who indicated opposition to the death penalty. Both were excused for cause. Several of the black jurors who were struck by the prosecutor had not answered any of the general questions and had given no information during voir dire besides their name and occupation.
“15. FACTOR 5: The court must consider ‘[t]he type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions.’ Id., 526 So.2d at 623. This component is not easily or usefully examined before the prosecutor has given his reasons since it is a lack of questions in an area of concern to the prosecutor which is of particular importance and weight. See Guthrie, supra, at 1020. See, supra, ¶ 14.
“16. FACTOR 6: The court must consider ‘[disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner.’ Id., 526 So.2d at 623. This component, too, can be more easily examined after the prosecutor has given reasons for his strikes. Even at this point, however, it is clear that while the prosecutor struck a heterogeneous group of jurors, more than half of whom were black, he left an equally heterogeneous group of jurors on the jury, only 8 percent of whom were black. The record reveals nothing apart from race to distinguish those struck from those not struck. See, supra, ¶ 14.
*731 “17. FACTOR 7: The court must consider whether the prosecutor engaged in ‘[disparate examination of members of the venire.’ Id., 526 So.2d at 623. In light of the extremely perfunctory voir dire in this case, which was generally directed at the panel as a whole, there appears to be no indication of disparate examination. Again, however, this factor is more easily evaluated after the prosecutor gives reasons for his strikes. See, supra, ¶ 14.
“18. FACTOR 8: The court must consider whether ‘all or most of the [prosecutor’s] challenges were used to strike blacks from the jury.’ Id., 526 So.2d at 623. Here the prosecutor used 10 of ... 19, or 53 percent, of his peremptory challenges to strike blacks while the venire was only 27 percent black. See United States v. Alvarado, 923 F.2d 253, 256 (2nd Cir.1991) (‘a challenge rate nearly twice the likely minority percentage of the venire strongly supports a prima facie case under Batson.’)
“19. FACTOR 9: ‘The court must consider whether the state used peremptory challenges to dismiss all or most black jurors.’ Id., 526 So.2d at 623. In this case, the state used its peremptory challenges to dismiss 10 of 14, or 71 percent, of the black veniremembers. While the venire was 27 percent black, the jury was only 8 percent black.
This evidence, provided by the appellant, was sufficient to establish a prima facie case of discrimination pursuant to Ex parte Branch, supra. Therefore, we find that the trial court’s determination that the appellant failed to meet his burden was erroneous. This cause is to be remanded to the trial court in order for a hearing to be held, in which the prosecutor must come forward and give reasons for his peremptory challenges. The trial court shall then determine whether these reasons are sufficiently race-neutral under the ■ guidelines provided by Ex parte Branch, supra, and Ex parte Bird; Ex parte Warner, 594 So.2d 676 (Ala.1991). If the trial court determines that the reasons given by the prosecutor are sufficiently race-neutral, a transcript of the hearing and the trial court’s findings of fact and conclusions of law are to be returned to this court. If the trial court determines that the prosecutor’s reasons are not sufficiently race-neutral, the appellant is entitled to a new trial, and an order reflecting this finding is to be returned to this court. In either case, a return is to be made to this court within 45 days of the date of this opinion.
OPINION EXTENDED; REMANDED WITH INSTRUCTIONS.
All the Judges concur.

"The state struck five black men: Lloyd Ladd, Robert Williams, Pearlus Foye, Jimmy Gary, and Eddie King; and five black women: Diana Jackson, Constance Jones, Vivian Booker, Barbara Robinson, and Odessa Williams.

"The prosecutor struck an employee of the Alabama School of Fine Arts (Vivian Booker), a retired government employee now self employed (Pearlus Foye), a chef (Jimmy Gary), a housekeeper (Diana Jackson), a retired school counselor (Constance Jones), a retired steel worker (Eddie King), a Transit Authority employee (Lloyd Ladd), an employee of Southern Research Institute (Barbara Robinson), an employee of the telephone company (Odessa Williams), and a steel worker (Robert Williams).

“Pearlus Foye, Constance Jones, Eddie King, Lloyd Ladd, Barbara Robinson, Odessa Williams, Robert Williams.

"Vivian Booker, Jimmy Gary.

"Diana Jackson.

"Regardless of this Court’s prior awareness of the District Attorney’s pattern of disproportionate strikes against black veniremembers, Mr. Smith was intending to make such a showing to the Court at the scheduled hearing but has never been given an opportunity to make such a showing.

"While the Vanscoy case was tried prior to Mr. Alverson’s tenure as District Attorney, his chief assistant, Ron Hudson, was involved in both the Vanscoy case and Mr. Smith’s trial.

Excluding the Garth, Culver, Eckles, and the two Handey cases."