In this fraud action William Lester, Jr., a licensed cosmetologist, sought damages from Phillips Colleges of Alabama, Inc., and Southern Junior College ("the school"), based on allegations that the school had misrepresented the nature of its cosmetology instructor program.[1] A jury awarded Lester $15,000 in compensatory damages and $35,000 in punitive damages. The trial court entered a judgment on that verdict and later denied the school's motion for a judgment notwithstanding the verdict, or to alter, amend, or vacate the judgment, or for a new trial. The school appealed. We affirm. *Page 310 
The following issues have been presented for our review:
 1) Whether the school was entitled to a judgment notwithstanding the verdict on the ground that the evidence was insufficient to submit Lester's fraud claim to the jury;
 2) Whether the school was entitled to a judgment notwithstanding the verdict on the ground that Lester's fraud claim was not pleaded with sufficient particularity under Rule 9(b), A.R.Civ.P.;
 3) Whether the school was entitled to a new trial on the ground that the trial court improperly admitted the testimony of Donay Sturgeon;
 4) Whether the school was entitled to a new trial on the ground that the trial court first admitted the testimony of Jean Salary and later excluded it, with an appropriate instruction to the jury;
 5) Whether the school was entitled to a new trial on the ground that Lester's attorney intentionally discriminated against certain potential jurors, in violation of the rule announced in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986);
 6) Whether the school was entitled to a new trial on the ground that Lester's attorney made an impermissible comment concerning the school's financial status;
 7) Whether the school was entitled to a new trial on the ground that the trial court erred in refusing certain written jury instructions requested by the school; and,
 8) Whether the school was entitled to a new trial on the ground that the damages were excessive.
Considering the first two issues together, we note the record shows that Lester initially made the following allegations in his complaint:
 "1. On or about October 12, 1987, the defendants and the plaintiff entered into an enrollment agreement whereby the plaintiff would pay the defendants total costs of Two thousand eight hundred seventy five dollars ($2,875.00) and would enter the defendants' study program of cosmetology instructor.
 "2. At that time the defendants represented to the plaintiff that he would be placed in a curriculum designed specifically and exclusively for persons interested in obtaining a cosmetology instructor's diploma and cosmetology instructor's license.
 "3. At that time the defendants wantonly, negligently, knowingly and fraudulently concealed the fact that the plaintiff would not be placed in a curriculum designed specifically for the purpose of providing training which would provide plaintiff with a cosmetology instructor's diploma and cosmetology instructor's license.
 "4. At that time the defendants misrepresented to the plaintiff that he would be placed in a curriculum designed specifically for the purpose of providing training which would provide plaintiff with a cosmetology instructor's diploma and cosmetology instructor's license.
 "5. Defendants also knowingly, fraudulently and wantonly concealed the fact that their program of study was not, and had never been, designed to provide a course of study exclusively for cosmetologists to obtain a cosmetology instructor's diploma and a cosmetology instructor's license.
 "6. The above stated facts were of such a nature that the failure to communicate them induced the plaintiff to enroll in the defendants' program, and as a result, plaintiff was damaged.
 "7. By virtue of the relationship between the plaintiff and defendants, in that the defendants had superior knowledge and expertise in the field of education[,] defendants were under a duty to relate these material facts."
(Emphasis added.) Lester amended his complaint shortly before trial by adding the following allegation:
 "The defendants represented to the plaintiff, William Lester, Jr., that they *Page 311 
would provide him with defendants' cosmetology instructor's course."
Recently, in Thomas v. Baptist Medical Center-DeKalb,614 So.2d 997 (Ala. 1993), we again explained that although under modern rules of civil practice the pleadings generally need only to put the defending party on notice of the claims against him, Rule 9(b) is an exception to the rule set out in Rule 8(a) permitting generalized pleadings. " 'The pleading must show [the] time, [the] place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained.' " Miller v. MobileCounty Board of Health, 409 So.2d 420, 422 (Ala. 1981), quoting the committee comments to Rule 9(b). Contrary to the school's contention, a careful reading of Lester's allegations show that they were sufficiently specific to inform the school as to the nature of the alleged misrepresentations (i.e., that the school had induced Lester to pay over $2,000 in tuition by misrepresenting the content or scope of its cosmetology instructor program), as to the time of the misrepresentations (i.e., on or about October 12, 1987), and as to the place where Lester claimed the misrepresentations had been made (i.e., at the school). Lester's complaint met the requirements of Rule 9(b).
As to the sufficiency of the evidence, the record shows that Lester's claim was based on allegations that the school had failed to perform as promised by not providing him with adequate practical training. In Hearing Systems, Inc. v.Chandler, 512 So.2d 84, 87 (Ala. 1987), this Court, quotingPurcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519
(Ala. 1983), held:
 " 'The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). . . .' "
See, also, Centon Electronics, Inc. v. Bonar, 614 So.2d 999
(Ala. 1993).
The evidence shows that written materials provided to Lester by the school stated that students in the cosmetology instructor program would receive a certain number of hours of practical training by assisting the instructors in teaching cosmetology students, both in a "clinic" setting and in the "classroom." Lester presented evidence that he paid over $2,000 in tuition and completed the program in reliance on the school's representations. The evidence further indicated that he received far less practical training than he had been led to believe he would receive. Specifically, Margaret Moody, the director of the school's cosmetology instructor program, testified that the school never intended to allow cosmetology instructor students to obtain the kind of practical teaching experience described in the school's materials. She testified further that although the school's materials stated that cosmetology instructor students were to participate in teaching "classes," the school actually intended for these students to practice their teaching before one of the school's instructors, without a "class" actually being present. Two instructors, Anna Johnson and Lana Parker, testified that they were never made aware that cosmetology instructor students were supposed to receive a certain number of hours of practice teaching. Although the school maintained records as to the number of hours that students attended classes, it kept no records documenting any student's activities during those classes. The evidence was sufficient under the "substantial evidence" and the "clear and convincing evidence" standards of review, *Page 312 
both of which are applicable in this case, see Ala. Code 1975, §§ 12-21-12 and 6-11-20, to create a fact question for the jury as to whether, as Lester maintained, when the school contracted with him it intended not to provide him with the kind of training outlined in its written materials. The trial court properly denied the school's motion for a judgment notwithstanding the verdict.
As to the third and fourth issues, the school contends that the trial court erred in allowing Donay Sturgeon to testify on behalf of Lester. The school also contends that the court erred when it allowed Jean Salary to testify on behalf of Lester and that the prejudice caused by that error was not eradicated when the court later instructed the jury to disregard her testimony. The thrust of the school's complaint appears to be that Lester, for the purpose of setting an "ambush" at trial, concealed an intention to call these witnesses. The school asserts that neither of these witnesses should have been permitted to testify because Lester failed to identify them in a supplemental or amended response to one of its interrogatories that sought disclosure of potential witnesses. The school insists that the subsequent exclusion of Salary's testimony did not eradicate the prejudice caused by its initial admission.
After reviewing the record, we conclude that the trial court committed no error in connection with these two witnesses. It is well settled that the trial court, based on the particular circumstances of the case, may properly require a party to disclose the names of all persons he intends to call as witnesses at trial, but that a discovering party does not have the absolute right to demand from an adverse party a list of all witnesses to be called at trial. See Alabama Power Co. v.Courtney, 539 So.2d 170 (Ala. 1988). In the present case, the trial court considered all of the circumstances surrounding Lester's use of these witnesses and apparently concluded that he had not knowingly concealed their identities in violation of Rule 26(e), A.R.Civ.P. Sturgeon was not located and interviewed until shortly before trial. The decision to allow this witness to testify was within the discretion of the trial court, and we find no abuse of discretion in this regard. Likewise, the decision to admit Salary's testimony was also discretionary with the trial court. The record shows that at the close of Lester's case, the school renewed its motion to exclude the testimony of both Sturgeon and Salary. After reconsidering the matter, the trial court apparently concluded that, because Lester's attorney had spoken with Salary well before the trial, Lester should have informed the school sooner that Salary would be called as a witness. The trial court instructed the jury as follows:
 "Yesterday afternoon we all heard Willa Jean Salary testify. Do you remember the lady? I have determined, okay, as your Judge and as a matter of law, that that lady's testimony is to be disregarded by y'all, okay. It's a legal matter. It doesn't have anything to do with anything but that. It's purely legal, so what I'm saying to you is, that with regard to that lady's testimony, I'm instructing you to disregard all of it, okay. You may have some curiosity at some point after the trial. I don't mind telling you what it is, but it's purely legal. You'll just have to take my word for it."
The school did not object to this instruction. We can find no abuse of discretion on the trial court's part in the way it handled the testimony of this witness. See Burnett v. Martin,405 So.2d 23, 25 (Ala. 1981) ("the general rule . . . is that if evidence is admitted, but later deemed improper and excluded, the error is cured so long as the jury is instructed clearly and explicitly to disregard the evidence").
The school contends that it was entitled to a new trial on the ground that Lester, who is black, intentionally discriminated against potential white jurors, in violation of the rule announced in Batson v. Kentucky, supra. (Issue five) The rationale of Batson has been extended to civil cases.Edmonson v. Leesville Concrete Co., ___ U.S. ___,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Thomas v. DiversifiedContractors, Inc., 551 So.2d 343 (Ala. 1989). *Page 313 
Assuming, without deciding, that Batson applies under the facts of this case, see White Consolidated Industries, Inc. v.American Liberty Ins. Co., 617 So.2d 657 (Ala. 1993); see, also, Williams v. State, [Ms. 91-1259, February 12, 1993] ___ So.2d ___ (Ala.Crim.App. 1993), we note that the school presented no evidence to the trial court from which an inference of intentional racial discrimination could be inferred. The record shows that the jury was selected from a venire of 24 potential jurors. Nineteen of those potential jurors were white and five were black. The school exercised its peremptory challenges to remove four of the five blacks from the venire. The jury, as finally empaneled, consisted of eleven whites and one black. The speciousness of the school's position on this issue is reflected in the fact that Lester had no choice but to remove some of the whites from the mostly white venire. The school would, in effect, have us hold that Lester's failure to strike at least some of the blacks from the venire is evidence of intentional racial discrimination on his part. This we refuse to do. The trial court properly rejected the school's motion for a new trial on this ground.
As to the sixth issue — whether the school was entitled to a new trial on the ground that Lester's attorney made an impermissible comment concerning the school's financial status — the record shows that Lester's attorney made the following remarks during his opening statement:
 "[T]his school is primarily in the business of making money.
". . . .
 "Not only will you learn that this school — the student population is basically made up of students who receive financial aid that goes into the pocket of the school. The school makes a bunch of money from these students, and that's going to be the evidence. They make a bunch of money. They recruit students. Most of these students never finish. Most of them never finish. But the school gets most of this money."
The school did not object to these remarks when they were made. However, after the school had completed its opening statement and after the jury had been excused for the day, the school moved to have the trial court instruct the jury not to consider the remarks. Before the jury reassembled the next morning, the school requested that the trial court "give some sort of instructions to the jury for them to disregard [the remarks] in such a way [as] not to overemphasize or underemphasize" the remarks. The trial court gave the following instruction:
 "Before we get started with the evidence, let me say something about a comment that was made yesterday during the opening statements with regard to the defendant — the school making a bunch of money. Y'all disregard that statement. That doesn't have anything to do whatsoever with the merits of this lawsuit. Even if you remember it, if you do, wipe it out and we're going to go on and hear all the evidence in this case regardless of that, okay."
The school did not object to this curative instruction. The school was not entitled to a new trial on the ground that Lester's attorney made an impermissible comment with respect to the school's wealth. See Hill v. Sherwood, 488 So.2d 1357 (Ala. 1986).
Neither was the school entitled to a new trial on the ground that the trial court erred in refusing several of its written requested jury instructions. (Issue seven.) After examining the school's requested instructions, we conclude that they were properly refused because they were either confusing or misleading or because the same rule of law was substantially and fairly given to the jury either in the court's oral charge or at other stages of the trial. Rule 51, A.R.Civ.P. We specifically reject the school's contention that the court's failure to use the words "substantial evidence" was fatal to its oral charge. Lester's action was not pending on June 11, 1987; therefore proof by substantial evidence was required in this case to sustain his claim for compensatory damages. Ala. Code 1975, § 12-21-12. "Substantial evidence" is defined as "evidence of such *Page 314 
weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of thefact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). (Emphasis added.) See Moore v. Liberty National Life Ins. Co., 581 So.2d 833
(Ala. 1991). As we have noted, the evidence was sufficient, under both the "substantial evidence" and the "clear and convincing evidence" standards of review, to submit Lester's fraud claim to the jury. The question concerning the sufficiency of the evidence (i.e., whether it was of such "weight and quality" that the jurors could reasonably infer from it that Lester had been defrauded) was a question of law and was therefore for the court to decide; the court answered that question when it ruled on the school's motion for a directed verdict at the close of all the evidence. Throughout its oral charge, the trial court instructed the jurors that Lester bore the burden of reasonably satisfying them from the evidence that the school made a promise that it intended not to keep. Therefore, the trial court gave the jury the guidance it needed.
Finally, the school contends that the damages were excessive. After carefully reviewing the record, however, we agree with the trial court that the evidence supports both the $15,000 compensatory damages award and the $35,000 punitive damages award. Lester testified that he had paid the school over $2,000 in tuition. He also testified that before enrolling in the school's program, he was working four days per week as a cosmetologist and that he was earning approximately $50 on a "bad" day and between $150 and $200 on a "good" day. While enrolled in the school, Lester earned approximately $130 per week. The jury could have found, therefore, that Lester lost, in addition to his tuition, between $1,680 ($50 x 4 days — $130 x 24 weeks in the program) and $16,080 ($200 x 4 days — $130 x 24 weeks) in income. As to the punitive damages award, the jury could have found from the evidence that the school had intentionally misrepresented the nature of its cosmetology instructor program for the purpose of increasing its enrollment and, ultimately, its tuition revenues. The $35,000 award was not excessive for such an intentional fraud.
We note the school's insistence that this case should be remanded with instructions for the trial court to make specific findings of fact on the excessiveness issue, in accordance with our holding in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). However, since Hammond, we have pointed out that it was never our intention to automatically remand every case in which excessiveness was at issue. See Lowder Realty Co. v. Sabry,542 So.2d 1240 (Ala. 1989). Where the record on appeal is sufficient for this Court to review the excessiveness issue, as it is in the present case, a Hammond remand is not necessary.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Southern Junior College was renamed Phillips Junior College after this action was filed.