WELCH, Judge.
Kenneth Eugene Smith appeals from the circuit court’s summary denial of his petition, filed pursuant to Rule 32, Ala. R.Crim. P., for relief following his conviction and death sentence for the capital murder of Elizabeth Dorlene Sennett. We reverse and remand for further proceedings.
Smith was indicted by a Colbert County grand jury on April 7, 1988, on a charge of murder made capital because it was done for pecuniary or other consideration or was pursuant to a contract for hire. § 13A-5-40(a)(7), Ala.Code 1975. The case was transferred to Jefferson County, and the case was tried before a jury. On November 3, 1989, Smith was convicted of capital murder. The jury recommended that the death sentence be imposed, and the trial court imposed the death sentence. Smith’s conviction was reversed on appeal because of a violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Smith v. State, 588 So.2d 561 (Ala.Crim.App.1991), on return to remand, 620 So.2d 727 (Ala.Crim.App.), on return to second remand, 620 So.2d 732 (Ala.Crim.App.1992). Smith was retried in April 1996, and he was again convicted of capital murder. By a vote of 11 to 1, the jury recommended that Smith be sentenced to life imprisonment without the possibility of parole. The trial court over *42 rode the jury’s recommendation and sentenced Smith to death. Smith’s conviction and sentence were affirmed. Smith v. State, 908 So.2d 273 (Ala.Crim.App.2000). The Alabama Supreme Court granted cer-tiorari review, and then quashed the writ of certiorari as having been improvidently granted. Ex parte Smith, 908 So.2d 302 (Ala.2005). Review was denied by the United States Supreme Court. Smith v. Alabama, 546 U.S. 928, 126 S.Ct. 148, 163 L.Ed.2d 277 (2005).
On March 16, 2006, Smith filed a petition pursuant to Rule 32, Ala. R.Crim. P. The State filed an answer to the petition on July 21, 2006. Smith sought from the trial court, and was granted, leave to file an amended petition. On June 1, 2007, Smith filed an amended petition, a portion of which was filed under seal, upon Smith’s request and after the circuit court granted Smith’s motion for leave to file a portion of the petition under seal.[1] The parties subsequently submitted to the circuit court a joint consent order setting a schedule for the filing of additional pleadings and for an evidentiary hearing that, the parties stated, they anticipated would be held in early 2008. The circuit court signed the consent order on September 17, 2007. On October 1, 2007, the State filed a motion for partial dismissal, seeking summary disposition of many of the claims raised in the amended petition. The motion for partial dismissal did not seek dismissal of, or otherwise mention, a majority of the claims of ineffective assistance of counsel presented by Smith in the amended petition. Smith filed a motion for discovery, and the State filed a response to that motion in which it acknowledged that Smith was entitled to discovery of many of the documents he had requested. On November 16, 2007, Smith filed a pleading opposing the State’s motion for partial dismissal.
On March 11, 2008, the circuit court entered an extensive order summarily denying Smith’s petition for postconviction relief. The circuit court also entered an order denying Smith’s motion for discovery. Smith filed a motion to reconsider, alter, amend, or vacate both orders. The court entered a written order addressing the arguments raised by Smith in the motion, and it denied the motion. This appeal follows.
On direct appeal from Smith’s second conviction and death sentence this Court summarized the evidence from trial:
“The State’s evidence tended to show the following. On March 18, 1988, the Reverend Charles Sennett, a minister in the Church of Christ, discovered the body of his wife, Elizabeth Dorlene Sennett, in their home on Coon Dog Cemetery Road in Colbert County. The coroner testified that Elizabeth Sennett had been stabbed eight times in the chest and once on each side of the neck, and had suffered numerous abrasions and cuts. It was the coroner’s opinion that Sennett died of multiple stab wounds to the chest and neck.
“The evidence established that Charles Sennett had recruited Billy Gray Williams, who in turn recruited Smith and John Forrest Parker, to kill his wife. He was to pay them each $1,000 in cash for killing Mrs. Sennett.
*43 There was testimony that Charles Sennett was involved in an affair, that he had incurred substantial debts, that he had taken out a large insurance policy on his wife, and that approximately one week after the murder, when the murder investigation started to focus on him as a suspect, Sennett committed suicide. Smith detailed the following in his confession to police:
“ ‘About one month prior to March 18, 1988, I was contacted by Billy Williams. Billy came over to my house and we talked out on the front porch. It was late afternoon. Billy said that he knew someone that wanted somebody hurt. Billy said that the person wanted to pay to have it done. Billy said the person would pay $1500 to do the job. I think I told Billy I would think about it and get back with him. Billy lives at the corner of Tuscaloosa Street and Cypress Street near the telephone company. Billy drives a red and white Thunderbird. Billy and I are good friends. Billy and I talked about this several times before I agreed to do it. I had already talked with John Parker about helping me.
“T think I first met Charles Sennett about two weeks prior to the murder. Billy arranged the meeting. At the time I met Mr. Sennett I did not know who he was. I did not ask his name and he did not ask what my name was. Mr. Sennett told me that he wanted somebody taken care of. Mr. Sennett said that the person would be at home, that they never had any visitors. Mr. Sennett said that the house was out in the country. At that time I just listened to his proposal and told him I would get back with him. When we talked we sat in Mr. Sennett’s truck in front of Billy’s apartment. I gave him my phone' number.
“ ‘Mr. Sennett called me a couple of times to see if I had made a decision. Sometime between the Monday prior to the murder and the Thursday prior to the murder, Mr. Sennett learned that John and I would do what he wanted. I met with Mr. Sennett on Tuesday prior to the murder in the coffee[house] at ECM. At this meeting Mr. Sennett drew me a diagram of his house and told me that his wife and he would be out of town on Wednesday, to go down to the house and look around. By the time Sennett and I met at ECM I had learned through conversations with him that it was his wife that he wanted killed and the price agreed was $1,000 each— excuse me — $1,000 each for Billy Williams, John Parker and I.
“ ‘The next meeting was on Thursday prior to the murder in front of Billy’s apartment again. Billy, Mr. Sennett and I sat in Mr. Sennett’s silver car and talked. I don’t recall what time it was exactly. I think it was in the morning. At this meeting Sennett gave me $200 and showed us the rest of the money. Two hundred dollars was for anything we needed to do the job. John Parker sat in my car while Billy and I talked with Mr. Sennett. The murder was supposed to look like a burglary that went bad. This was Mr. Sennett’s idea. Sennett told me to take whatever I wanted from the house. It was agreed for John and I to do the murder and then come back to Billy’s apartment — to Billy’s house — excuse me — and get the rest of our money. This meeting only lasted a short while. Sennett told us that he would be gone from 8:30 until noon. Then on 3/18 of '88 ... Friday, John and I got together *44 around 8:30. We were in John’s car, a Pontiac Grand Prix, gold. John drove to Muscle Shoals, then I drove down to the Sennett house. John had brought a black handle survival knife and a black holster. At this time we still did not know how we were going to kill Mrs. Sennett.
‘“John and I got to the Sennett .house around 9:30, I think. I parked at the back of the house near a little patio that led into the house. I went to a door to the left of the car. I think there was a white freezer nearby. I knocked on the door and Mrs. Sennett came to the door. I told Mrs. Sennett that her husband had told us that we could come down and look around the property to see about hunting on it. Mrs. Sennett asked my name. I told her I was Kenny Smith. She went to the phone and called her husband and came back and told us it was okay to look around.
‘“John and I looked around the property for a while then came back to the house. John and I went back to the door. We told Mrs. Sennett we needed to use the bathroom and she let us inside.
“‘I went to the bathroom nearest the kitchen and then John went to the bathroom. I stood at the edge of the kitchen talking with Mrs. Sennett. Mrs. Sennett was sitting at a chair in the den. Then I heard John coming through the house. John walked up behind Mrs. Sennett and started hitting her. John was hitting her with his ñst. I started getting the VCR while John was beating Mrs. Sennett. John hit Mrs. Sennett with a large cane and anything else he could get his hands on. John went into a frenzy. Mrs. Sennett was yelling just stop, we could have anything we wanted..
“ ‘As John was beating up Mrs. Sennett, I messed up some things in the house to make it look like a burglary. I took the VCR out to the car.
“ ‘The last place I saw Mrs. Sennett she was lying near the fireplace covered with some kind of blanket. I had gone outside to look in the storage buildings when I saw John run out to the pond and throw some things in it. I also took a small stereo from the house — “also,” is the last word.
“ T don’t know what brand it was or where in the house I got it. The VCR was a Samsung. I got it from under the TV set in the den. When John got back to the car we drove back to Billy’s apartment to get our money.
“‘On the way back John told me that he had stabbed her once in the neck. I never stabbed Mrs. Sennett at all. When John and I got to Billy’s, we were given $900 a piece. Billy gave us the money.
“ ‘At the time of the murder I never [knew] Charles Sennett’s name or his wife’s. It was only when it came out in the newspaper that I learned the name of the lady that was killed and Charles Sennett.
“T took the Samsung VCR home with me. The last time I saw the stereo it was in John’s car. It was around noon when we got to Billy’s apartment. Then on 3/31/88 — in parenthesis, Thursday — my house was searched by investigators and they found the VCR. I was brought to the Colbert County Courthouse where I was advised of my rights. After being advised of my rights, I gave Investigator May this written statement.’
“Smith’s statement to police was corroborated at trial. Donald Buckman, a friend of Smith’s, testified that Smith *45 approached him about one week before the murder and asked him if he would be interested in participating in beating someone up in exchange for money. Another witness, Brent Barkley, testified that Smith told him that he had been hired to beat up someone. Barkley also stated that he saw Smith on the evening of the murder and that Smith’s hand was ‘bruised and wrapped.’ There was also testimony that Smith had in his possession a large amount of money immediately after the murder.
“Smith’s defense at trial was that he participated in the assault of Elizabeth Sennett but that he did not intend to kill her. Counsel in opening statement stated the following:
“ ‘[Smith] agreed with Sennett to go beat Elizabeth Dorlene Sennett, to rough her up, to make it look like a robbery for fast cash. That is the terms they used. It was not to kill Mrs. Sennett. It was not to take her life. As shameful and as vile, it was nothing more or nothing less than to beat her up and to take [sic]. And that plan, what they agreed to — and you will hear evidence of this — that as evil as that plan was, that is all it was.’ ”
Smith v. State, 908 So.2d at 279-81 (footnotes omitted).[2]

Standard of Review

“[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala.2001).

Analysis

In the first three issues Smith presents in his brief on appeal Smith contends that the trial court erred when it summarily dismissed the amended petition. Smith argues in Part I of his brief that the circuit court denied his right to due process when it dismissed many of the claims in his amended ■ petition on the ground that Smith had failed to “prove” his claims. Smith contends that, because the case was in the pleading stage of the postconviction proceeding he, at that time, had no burden to prove any of the claims — only to plead them sufficiently. Smith argues that the circuit court’s application of the improper standard was particularly prejudicial in light of fact that the court also denied his motion for discovery. The State argues that a trial court may adopt the State’s proposed findings of fact and conclusions of law, that there is no reason to doubt that the final order reflects the trial court’s own findings of fact and conclusions of law, and that Smith has failed to cite any instances where the circuit court’s findings are not supported by the evidence and the recorc}. The State’s argument is curious because the record does not reflect that the State filed a proposed order, it does not reflect that the trial court adopted a proposed order prepared by the State, and Smith does not argue as error that the circuit cohrt adopted a proposed order.
In Part II of his brief Smith argues that the trial court deprived him of due process *46 and a fair hearing when it dismissed his claims of ineffective assistance of counsel without notice and without allowing him an opportunity to amend the petition again. The State argues that Rule 32.7, Ala. R.Crim. P., permits a trial court to dismiss summarily a Rule 32 petition if it fails to satisfy the requirement of pleading a clear and specific statement of the grounds for relief, including full disclosure of the factual basis for each claim. The State then argues that each claim of ineffective assistance of counsel was properly dismissed by the trial court.
In Part III of his brief Smith argues that the trial court’s judgment should be reversed because the circuit court addressed the allegations of the original petition even though that petition had been superseded by an amended petition. The State argues that Smith’s claim is merit-less because, it says, the trial court specifically addressed the amended claims.
A.
Turning first to the argument Smith raises in Part II of his brief — that the trial court denied him due process when it dismissed the ineffective-assistance-of-counsel claims without notice and an opportunity to be heard — we find no merit to that claim. Rule 32.7, Ala. R.Crim. P., provides for summary disposition of postconviction petitions in certain circumstances:
“If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.”
This Court has stated:
“An evidentiary hearing on a coram nobis petition [now Rule 32 petition] is required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
Moore v. State, 502 So.2d 819, 820 (Ala.1986), quoted in Lee v. State, 44 So.3d 1145, 1151 (Ala.Crim.App.2009),
Thus a posteonviction petitioner is not automatically entitled to an eviden-tiary hearing. Moreover, this Court has recognized that “[t]here is no requirement that a circuit court even receive a response or a motion to dismiss from the State before summarily denying a Rule 32 petition.” Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -, - (Ala.Crim.App.2010). Unlike the preclusionary grounds of Rule 32 that must be pleaded by the State or they are waived, Ex parte Clemons, 55 So.3d 348 (Ala.2007), deficiencies in the pleading of postconviction claims can be noted sua sponte by the trial court and can provide grounds for dismissal of a petition pursuant to Rule 32.7, Ala. R.Crim. P., even if the deficiencies are not first raised by the State.
Although Smith argues that, at the very least, the trial court should not have dismissed the ineffective-assistance-of-counsel claims without giving him the opportunity to amend the petition, Smith did not move to amend the petition a second time; therefore, there is no adverse ruling from *47 the trial court as to an amended petition. Because Smith suffered no adverse ruling regarding a proposed amendment, this argument is not properly before this Court for review. E.g., Boyd v. State, 913 So.2d 1113, 1124 (Ala.Crim.App.2003).
B.
Turning to the issue Smith raises in Part III of his brief — that the trial court committed reversible error because it failed to address the allegations of the amended petition — we agree that the trial court’s order is problematic.
Smith filed his original Rule 32 petition on March 16, 2006. The State filed an answer to the petition on July 21, 2006. Smith filed an amended petition on June 1, 2007. On October 1, 2007, the State filed a motion for partial dismissal, seeking summary disposition of many claims raised in the amended petition. The motion for partial dismissal did not seek dismissal of, or otherwise mention, a majority of the claims of ineffective assistance of counsel presented by Smith in the amended petition.
On March 13, 2008, the trial court entered the order summarily dismissing the petition. The first 38 pages of the order addressed the claims Smith raised in the original petition, the State’s response to those claims, and the court’s findings of fact and conclusions of law relative to those claims. The trial court next addressed its findings relative to the amended petition. It first stated:
“The allegations contained in Section I of Petitioner’s First Amended Petition are redundant to the allegations contained in Section I, I-A, I-B, I-C (including sub-parts 1, 2 & 3), I-D (including sub-parts 1, 3 through 7), I-E, I-F (including sub-parts 1 through 5), I-G, I — I, II-A through E, III-A through C, IV-A & B, V-A & B, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV of the initial Petition for Relief. This Court adopts and incorporates its findings relative to those same claims as enunciated above.”
(C. 47.)
The trial court next addressed the substantive claims Smith had raised in the amended petition, and the court summarily dismissed the claims on grounds of preclusion after noting that the State had filed a motion for partial dismissal of those claims. (C. 47-49.) The court then addressed some of the additional claims Smith had raised in the amended petition, and it dismissed them. Smith filed a motion to reconsider, alter, amend, or vacate the summary dismissal of the amended petition, and he argued that the court had erroneously addressed the allegations of his original petition even though that petition had been superseded by the amended petition. In its order denying Smith’s motion to reconsider the trial court stated:
“The issues raised in the Original Petition were not necessary [sic] waived by the filing of an Amended Petition. The issues raised in the Original Petition and the allegations of the Amended Petition were all well addressed in this Court’s Order on Rule 32. In many instances further elaboration of an issue by and through the Amended Petition did not change this court’s findings with regard to that issue.”
(C. 668.)
The error in the trial court’s order dismissing Smith’s amended Rule 32 petition and in the order denying Smith’s motion to reconsider that order is not only the trial court’s statement that the amended petition did not “waive” issues raised in the original petition, but also the fact that a majority of the trial court’s order addresses the allegations of the original petition when, as Smith correctly argued to *48 the trial court and continues to argue in this Court, the original petition was superseded by an amended petition — an amendment he filed after obtaining leave of the trial court to do so. The Rules of Criminal Procedure do not address whether an amended petition supersedes an original petition. However, “[i]t is also generally understood that a postconviction proceeding filed pursuant to Rule 32, although touching on criminal matters and governed by the Alabama Rules of Criminal Procedure, is basically civil in nature,” Smith v. State, 918 So.2d 141, 146 (Ala.Crim.App.2005), and reference to civil pleading rules is appropriate here. In civil cases, the Alabama Supreme Court has stated:
“An amended complaint supersedes the previously filed complaint and becomes the operative pleading, unless it subsequently is modified. Grayson v. Hanson, 848 So.2d 146 (Ala.2002). [The defendant’s] June 2, 2004, motion to dismiss is addressed solely to the original complaint, and the original complaint has been superseded. See Holley v. St. Paul Fire & Marine Ins. Co., 396 So.2d 75 (Ala.1981)(noting that once an amended pleading is interposed, the original pleading no longer performs any function and any subsequent motion by an opposing party should be directed to the amended pleading).... ”
Ex parte Puedo, 923 So.2d 1069, 1072 (Ala.2005).
Therefore when, with leave from the trial court, Smith filed an amended petition that was a complete petition and was clearly intended to replace the original petition, the trial court erred when it addressed the allegations of the original petition and the State’s response to the original petition. Furthermore, after it addressed at length the allegations of the original petition the trial court stated — incorrectly, we note— that the allegations in Section I of Smith’s amended petition were “redundant to the allegations contained in Section I, I-A, IB, I-C (including sub-parts 1, 2 & 3), I-D (including sub-parts 1, 3 through 7), I-E, I-F (including sub-parts 1 through 5), I-G, I — I, II-A through E, III-A through C, IVA & B, V-A & B, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV of the initial Petition for Relief,” and it adopted and incorporated its findings regarding those claims. (C. 47.) The trial court’s findings in its discussion of the initial petition included extensive summaries of the State’s arguments from its answer to the allegations in the initial petition. The State apparently did not file an answer to the amended petition, however, so the trial court’s adoption and incorporation of its findings from the original petition that included discussion of and reliance on the State’s answer is particularly irrelevant to the discussion and resolution of claims raised in the amended petition. Moreover, as Smith correctly argues in his brief, by simply adopting and incorporating its findings from the initial petition, the trial court appeared to overlook and then failed to address the additional factual allegations Smith had included in the amended petition. When Smith raised the trial court’s error in his motion to reconsider, the trial court denied the motion and stated, in relevant part, “In many instances further elaboration of an issue by and through the Amended Petition did not change this Court’s findings with regard to that issue.” (C. 668.)(Emphasis added.) Rather than resolving the error Smith had raised, however, that statement raised an additional concern because the statement implies that, in some instances, Smith’s elaboration of an issue in the amended petition did change the trial court’s findings, but the court neither designated those issues nor stated how its findings were changed. We note, furthermore, that in the trial *49 court’s order denying Smith’s motion to reconsider, the court again referred to the State’s arguments, apparently making reference to the State’s answer to the original — superseded—petition, and had no relevance to the resolution of claims raised in the amended petition Smith had filed.
For the foregoing reasons, we hold that the trial court erred when it addressed Smith’s initial petition and the State’s answer to that petition in its final order because that petition had been superseded by Smith’s amended petition. The judgment must be reversed and the cause remanded for further proceedings, in accordance with the directions set out in the final portion of this opinion.
C.
We address three additional arguments Smith raised in his brief because the issues might arise again on remand.
1. Burden of pleading and burden of proof
First, Smith argues in Part I of his brief that the trial court erred when it dismissed claims of ineffective assistance of counsel on the ground that Smith had failed to “prove” those claims.
Rule 32.3, Ala. R.Crim. P., places the burden on the petitioner to plead and prove by a preponderance of the evidence the facts necessary to entitle him or her to relief. The burden to plead and the burden to prove arise at different times of- a postconviction proceeding, however.
Rule 32.6(b), Ala. R.Crim. P., states:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
In Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006), this Court stated:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Although Rule 32 imposes on a petitioner the burden to plead with specificity, it does not impose a burden to prove claims at the initial pleading stage. This Court has stated:
“Initially, it is important to distinguish between a petitioner’s burden to plead and a petitioner’s burden to prove.
*50 “ ‘[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must only provide “a clear and specific statement of the grounds upon which relief is sought.” Rule 32.6(b), Ala.R.Crim.P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala.R.Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof.’
“Ford v. State, 831 So.2d 641, 644 (Ala.Crim.App.2001). _ A claim may not be summarily dismissed because the petitioner failed to meet his burden of proof at the initial pleading stage, a stage at which the petitioner has only a burden to plead.”
Johnson v. State, 835 So.2d 1077, 1079-80 (Ala.Crim.App.2001). See Kelley v. State, 985 So.2d 972 (Ala.Crim.App.2007), and Borden v. State, 891 So.2d 393 (Ala.Crim.App.2002) (each case was remanded for further proceedings in part because the trial court dismissed the Rule 32 petition at the pleading stage based on petitioner’s purported failure to meet his burden of proof). See also Partain v. State, 47 So.3d 282 (Ala.Crim.App.2008).
.Smith presents several quotations from the trial court’s extensive order that, he says, demonstrate that the court dismissed the petition based on its determination that he had failed to prove his claims. We agree with Smith that it appears that the trial court erroneously dismissed many claims based on Smith’s purported failure of proof; for example, the court held that Smith failed to “present any evidence” to support a claim (C. 13); that Smith failed to “rebut the presumption that counsel’s actions were sound trial strategy” (C. 23); that he “failed to provide anything to this Court” in support of a claim of prejudice (C. 35); and that he failed to “demonstrate” that counsel’s performance was deficient or that he suffered prejudice as a result of counsel’s performance (C. 26, 27, 30, 34, 39).[3] As noted above, a petitioner in a Rule 32 proceeding has no burden to prove his allegations at the initial pleading stage.
We caution the trial court on remand to distinguish between the burden of pleading and the burden of proof when it addresses the claims in Smith’s amended petition.
2. Brady v. Maryland claims
Smith alleged in his amended petition, and again in Parts VI.A. — VI.D. of his brief on appeal, that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory evidence. The State acknowledges in its brief that three of Smith’s Brady claims — the claims discussed in Part VLB.-VI.D. of Smith’s brief on appeal — were based on allegations of newly discovered evidence, Rule 32.1(e), Ala. R.Crim. P. The trial court did not address the Brady allegations in light of the requirements set forth in Rule 32.1(e); instead, the trial court held that the Brady allegations were subject to various procedural bars, including Rule -32.2(a)(3) and Rule 32.2(a)(5), Ala. R.Crim. P.[4] Although *51 we do not express an opinion here about whether any of the Brady claims were subject to dismissal on procedural-bar grounds, we note that the trial court on remand should consider Smith’s claims in light of his argument that some of the evidence was newly discovered.
3. Lethal-injection claim
Smith argues in Part IX of his brief on appeal that the trial court erred when it dismissed, in part based on Rule 32.2(a)(3) and Rule 32.2(a)(5), Ala. R.Crim. P., the claim he had raised in the amended petition alleging that execution by lethal injection constitutes cruel and unusual punishment. As we did in McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007), we question the propriety of the circuit court’s dismissal of the claim pursuant to Rule 32.2(a)(5) because electrocution was the method of execution when Smith was convicted and sentenced, and because the effective date of the statute providing that lethal injection was the primary means of execution in Alabama was more than one year after this Court denied Smith’s application for rehearing. Applying the same rationale, we question the propriety of the circuit court’s dismissal of the lethal-injection claim pursuant to Rule 32.2(a)(3).
We express no opinion about whether the lethal-injection claim is subject to summary dismissal on any other grounds.

Conclusion

For the reasons discussed in Part B of the “Analysis” section of this opinion, we reverse the trial court’s judgment and remand this cause to the trial court for that court to address the allegations in Smith’s amended Rule 32 petition. Allegations of the amended petition that the trial court determines are procedurally barred may be dismissed if the court finds that the State properly pleaded the procedural bars. Allegations in the amended petition that the trial court determines were not pleaded with the specificity required in Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P., may also be summarily dismissed. Furthermore, pursuant to Rule 32.7, Ala. R.Crim. P., the trial court may dismiss allegations of the amended petition if the court finds that they fail to state a claim, or if it finds that no material issue of fact or law exists that would entitle Smith to relief under the claim. Smith is entitled to an opportunity to present evidence on any claims that contain a clear and specific statement of the grounds for relief and the facts relied on and that include facts that, if true, entitle Smith to relief. Rule 32.9, Ala. R.Crim. P. If the trial court determines that any claims in the amended petition are sufficiently pleaded ánd meritorious on their face and that Smith is entitled to an evidentiary hearing on those claims, the court may in its discretion take evidence by other means as provided in Rule 32.9(a), Ala. R.Crim. P. If the trial court determines that Smith is entitled to a fact-finding proceeding, the court may reconsider its order denying Smith’s motion for discovery, and it may enter an order allowing Smith discovery relevant to any claims for which the court will have a fact-finding proceeding or a hearing. The trial court shall then enter an order addressing all allegations raised in Smith’s amended petition, and it shall include a *52 transcript or other record of any additional proceedings, if any proceedings are held.
The court shall take all action necessary to see that the circuit clerk makes due return to this Court at the earliest possible time, and within 42 days after the release of this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WINDOM, KELLUM, and MAIN, JJ., concur. WISE, P.J., concurs in the result.

On Return to Remand

WELCH, Judge.
Kenneth Eugene Smith was convicted and sentenced to death for the capital murder of Elizabeth Dorleen Sennett. Smith’s conviction and sentence were affirmed by this Court. Smith v. State, 908 So.2d 273 (Ala.Crim.App.2000). The Alabama Supreme Court granted certiorari review but later quashed the writ of certio-rari as having been improvidently granted. Ex parte Smith, 908 So.2d 302 (Ala.2005). The United States Supreme Court denied review. Smith v. Alabama, 546 U.S. 928, 126 S.Ct. 148, 163 L.Ed.2d 277 (2005). Smith then filed a petition pursuant to Rule 32, Ala. R.Crim. P., and he raised numerous grounds that, he said, warranted relief from his conviction and sentence. Smith filed an amended Rule 32 petition. The trial court summarily dismissed Smith’s petition, and Smith appealed to this Court. This Court reversed the trial court’s judgment and remanded the case for further proceedings. Smith v. State, 160 So.3d 40 (Ala.Crim.App.2010). Specifically, this Court held that the trial court had erred because it addressed the claims in Smith’s initial petition even though that petition had been superseded by the amended petition, and this Court directed the trial court to address the allegations in the amended petition.
On July 21, 2011, the trial court entered an order that stated, in relevant part:
“[T]here are claims alleged within [Smith’s] First Amended Petition concerning the challenge to the handling of the afghan and the failure to disclose to the defendant’s counsel that the hair collected from the afghan was not consistent with [Smith’s] hair, in violation of Brady. This Court directs that [Smith] shall elaborate further on his claims that the afghan played a significant role in his conviction and the failure to adequately challenge the evidence of the afghan amounted to ineffective assistance of counsel. [Smith] shall also elaborate on his claim that the State failed to disclose that the hair collected from the afghan was not consistent with Petitioner’s hair in violation of Brady, the significance of this evidence and elaborate further on the allegation that this evidence was deliberately withheld from [Smith’s] trial attorneys.
“[Smith] also alleges that there exists newly discovered evidence that indicates that the Trial Judge failed to properly consider the mitigating circumstances in this case and acted under public pressure in overriding the jury’s recommended sentence. [Smith] is allowed to submit any affidavits that he may choose in support of each of his claims in regard to the afghan and hair evidence as well as in support of his claim that the Trial Judge did not consider the mitigating circumstances and acted under public pressúre. These affidavits will be accepted in lieu of testimony in support of [Smith’s] claims.”
(Remand C. 100-01.)[1]
On April 15, 2011, Smith filed a memorandum to elaborate on the claims as di *53 rected by the trial court, and he submitted four affidavits and numerous exhibits in support of those claims. The trial court granted the State the opportunity to submit affidavits in response to those submitted by Smith, but the State did not file any affidavits. The parties submitted written arguments in which each addressed the claims in the amended petition and the affidavits submitted by Smith. On July 13, 2011, the trial court entered an order denying Smith’s amended Rule 32 petition. Smith and the State have filed briefs in this Court on return to remand in which they address the trial court’s order.
We are compelled by controlling caselaw from the Alabama Supreme Court to remand this case because the trial court failed to comply with Rule 32.9, Ala. R.Crim. P., when it summarily dismissed some of the claims on which it had already permitted Smith to present evidence. In Ex parte McCall, 30 So.3d 400, 403 (Ala.2008), the Alabama Supreme Court relied on its earlier decision in Ex parte Grau, 791 So.2d 345 (Ala.2000), and held that if a trial court does not dismiss a petition pursuant to Rule 32.7(d), Ala. R.Crim. P., and the court instead holds a hearing, then “the trial court is required to make findings of fact as to each of the material issues upon which the hearing was held.” Specifically, the McCall Court held:
“[A] hearing need not be held if the petitioner fails to adequately present a material issue. If, however, the court holds a hearing, then Rule 32.9, Ala. R.Crim. P., provides, in pertinent part, as follows:
“ ‘(a) Hearing. Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact....
“ ‘(d) Findings of Fact. The court shall make specific findings of fact relating to each material issue of fact presented.’
“Thus, the trial court must first determine whether the petition raises ‘material issue[s] of fact or law ... which would entitle the petitioner to relief under [Rule 32].’ Rule 32.7(d). Once a hearing is held on those issues, the trial court is required to make findings of fact as to each of the material issues upon which the hearing was held. See Ex parte Grau, [791 So.2d 345 (Ala.2000) ].
“In this case, McCall petitioned for postconviction relief alleging 12 grounds of ineffective assistance of counsel. The trial court held an evidentiary hearing on the petition. By holding that hearing, the trial court implicitly found that the issues presented were ‘material issued] of law or fact ... which would entitle [McCall] to relief’ Rule 82.7(d), and, under Rule 32.9(d), the trial court therefore had a responsibility to make findings of fact as to each of those issues. Instead of issuing any such findings, however, the trial court dismissed McCall’s petition on the ground that his ‘bare allegations’ of prejudice were not sufficient to state a claim of ineffective assistance of counsel. Although this conclusion may have been an appropriate basis for a summary dismissal of the petition before a hearing was held, once a hearing has been held Rule 32.9(d) requires findings of fact in support of the judgment. Under our decision in Ex parte Grau, [791 So.2d 345 (Ala.2000),] the trial court’s failure to issue such findings is grounds for reversal. Therefore, the Court of Criminal Ap *54 peals’ decision to affirm the trial court’s judgment conflicts with Ex parte Grau, and we reverse the Court of Criminal Appeals’ decision and remand the case to that court for proceedings consistent with this opinion.”
30 So.3d at 403-04 (emphasis added; footnote omitted).[2]
The trial court made specific factual findings in its resolution of claims regarding the trial court’s sentencing determination, but it summarily dismissed several claims regarding the afghan and the hair sample found on the afghan. Because the trial court permitted Smith to present evidence on those claims, the trial court could not thereafter summarily dismiss the claims. Based on precedent established by the Alabama Supreme Court, we have no choice but to remand the cause for the trial court to comply with Rule 32.9(d) and to make specific findings relating to each material issue of fact presented on those claims involving the hair and the afghan on which the trial court permitted Smith to present evidence.[3]
As we stated in Andrews v. State, 38 So.3d 99 (Ala.Crim.App.2009), a case that presented similar circumstances:
“Although it seems a waste of scarce judicial resources to remand this case for the trial court to enter a new order setting forth its specific findings of fact, we are nevertheless bound by the Court’s holding in Ex parte McCall. However, as [then] Presiding Judge Wise[4] has written, we ‘urge the Alabama Supreme Court to consider amending Rule 32.9(d) so that in future cases, this Court has the discretion to determine whether a remand is necessary.’ Johnson v. State, 976 So.2d 1052, 1053 (Ala.Crim.App.2007) (Wise, J., dissenting).”
38 So.3d at 104.
Additionally, we note that in Part III.C. of its July 13, 2011, order on return to remand the trial court referred to “item number ‘539’ ” from what was purported to be a memorandum from criminalist John Kilbourn regarding the trace-evidence examination; that document was attached as part of Exhibit 4 to the affidavit of Palmer Singleton, one of Smith’s attorneys at his retrial. (Remand C. 138.) After the trial court filed its order Smith filed a motion in the trial court in which he sought to clarify the record by substituting a corrected copy of Exhibit 4 to Singleton’s affidavit. (Remand C. 1057-59.) Smith stated in the motion that the page that contained the reference to item number 539 was not part of Kilboum’s report but was part .of a summary of Kilboum’s testimony in Smith’s first trial that a defense attorney had prepared and that the page had been inadvertently included at the end of Exhibit 4. On August 18, 2011, the trial court entered an order in which it stated that Smith’s motion to clarify the record and substitute a corrected exhibit could not be ruled on without direction from this Court. (Remand C. 149.) On remand, the trial court shall rule on Smith’s motion to clarify the record, and, if the court permits the substitution of Exhibit 4 that does- not contain the page that refers to item num *55 ber 539, the trial court shall, of course, be permitted to amend its order in light of the substitution.
This cause is therefore remanded to the circuit court for proceedings consistent with this opinion. The circuit court is directed to take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time within 28 days from the release of this opinion.
REMANDED WITH DIRECTIONS. 
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. In their briefs to this Court both parties state that the State filed an answer to the amended petition on July 2, 2007, but the briefs include no record citation to an answer to the amended petition. Moreover, the record does not include an answer to the amended petition, and the case action summary does not indicate that an answer to the amended petition was ever filed with the circuit court. Neither party has filed a pleading with this Court indicating that the record is incomplete and requesting that the record be supplemented.

. Billy Gray Williams and John Forrest Parker were also convicted for the capital murder of Elizabeth Sennett. Williams was sentenced to life imprisonment without the possibility of parole, and his conviction and sentence were affirmed on direct appeal. See Williams v. State, 565 So.2d 1233 (Ala. Crim.App. 1990). Parker was sentenced to death by electrocution; his conviction and sentence were affirmed on direct appeal. Parker v. State, 587 So.2d 1072 (Ala.Crim.App.1991), on remand, 610 So.2d 1171 (Ala.Crim.App.), aff'd, 610 So.2d 1181 (Ala.1992).

. We note, too, that the trial court erred when it held that some of Smith’s claims of ineffective assistance of counsel were precluded by Rule 32.2(a)(3) and Rule 32.2(a)(5), Ala. R.Crim. P. (C. 20.) Smith was represented by the same attorneys at trial and on appeal, and counsel are not expected to allege their own ineffectiveness. E.g., Nelson v. State, 649 So.2d 1299, 1300 (Ala.Crim.App.1994).

. The trial court also determined that one of the Brady claims failed because defense coun *51 sel "ostensibly" knew about the information before trial, and stated that "it has not been shown" that counsel’s failure to present the evidence "was anything other than part of the trial strategy.” (C. 54.) Apart from the fact that the trial court erroneously faulted Smith for failing to meet his burden of "proof,” the court unnecessarily merged a discussion of ineffective assistance of counsel in the Brady issue, leading to confusion about the court's ultimate holding as to the Brady claim.

. The pages of the record submitted on return to remand are designated "Remand C.” in this opinion.

.The trial court permitted Smith to present evidence by way of affidavit and not in a hearing, but the requirement set out in Rule 32.9(d), Ala. R.Crim. P., that the trial court make specific findings of fact relating to each material issue of fact presented applies. Chambers v. State, 884 So.2d 15, 19 (Ala.Crim.App.2003).

. Among the claims in the trial court’s order on return to remand that require factual findings are those designated by the trial court as I.D.(2), I.D.(3), and III.C.

. Judge Wise is now an Associate Justice on the Alabama Supreme Court.