[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14543

_____

D.C. Docket No. 2:15-cv-00384-AKK

KENNETH EUGENE SMITH,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL STATE OF ALABAMA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 6, 2021)

Before WILSON, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

In 1996, Kenneth Smith was convicted of capital murder for his involvement in the killing of Elizabeth Sennett in her Colbert County, Alabama, home. After the penalty phase of Smith's trial, the jury recommended by vote of 11 to 1 that he receive a life sentence without the possibility of parole. The trial judge overrode the jury's verdict and sentenced Smith to death.[1] Smith petitioned the district court for a writ of habeas corpus, arguing ineffective assistance of trial counsel. The district court denied relief, and Smith now appeals.

I.

Reverend Charles Sennett, a minister in the Church of Christ, recruited Billy Williams, who in turn recruited Smith and John Parker, to kill his wife, Elizabeth.[2] In return, Sennett agreed to pay Williams, Smith, and Parker $1,000 each. The plan was to kill Elizabeth in the Sennetts' home and stage her killing as a burglary gone wrong. On March 18, 1988, Smith and his accomplices killed Elizabeth as planned, and Smith took a video cassette recorder (VCR) from the Sennett's home. Smith kept the VCR in his Lauderdale County, Alabama, home.

Captain Ronnie May of the Colbert County Sheriff's Department was the lead investigator on the case. His department received a call from an anonymous

---

[1] If Smith's trial had occurred today, he would not be eligible for execution because, in 2017, Alabama amended its capital-sentencing scheme prospectively to repeal trial judges' authority to override capital jury sentencing determinations. *See* Ala. Code. § 13A-5-47 (2017).

[2] Sennett was involved in an affair, had incurred substantial debts, and had taken a large insurance policy out on Elizabeth. One week after the murder, when the murder investigation started to focus on him as a suspect, Sennett committed suicide.

informant about Elizabeth Sennett's murder.  Among other things, the informant told investigators that Smith had obtained the VCR from the Sennetts' and it was now located in Smith's home.  Captain May, along with Investigator Charles Ford of the Lauderdale County Sheriff's Department, obtained a search warrant from the Lauderdale County Circuit Court.  The court issued the warrant directed "TO ANY SHERIFF OF THE STATE OF ALABAMA."  Investigator Ford's signature appears on the warrant.

Captain May, as well as a team of law-enforcement officers from the Lauderdale County Sheriff's Department, the Florence Police Department,[3] and the Lauderdale County District Attorney's Office, executed the search warrant. Captain May discovered the VCR, but no additional evidence was found.  After the search, Captain May took Smith to the Colbert County Sheriff's Department, where he read Smith his *Miranda* rights.[4]  Captain May then interrogated Smith. During the course of the interrogation, Smith provided a statement regarding his involvement in the killing of Elizabeth Sennett.

At trial, Smith was convicted of capital murder and sentenced to death.  But on remand from the Alabama Court of Criminal Appeals, the trial court overturned

---

[3] The city of Florence, Alabama, is located in Lauderdale County.
[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Smith's conviction and sentence, and ordered a new trial on the basis that the state had exercised its peremptory challenges to prospective jurors based on their race.

Prior to retrial, Smith's counsel moved to suppress the VCR and his custodial statement on the ground that the search violated his federal and state constitutional rights because the officers continued searching Smith's home after finding the VCR, even though the warrant was issued for the VCR only. Trial counsel also argued that the search warrant was based on information provided by an anonymous informant who had acted as the state's agent in conducting a warrantless search of Smith's home. The court denied Smith's motion. Trial counsel did *not* argue that the search warrant was facially invalid under Alabama law, which requires that a search warrant be "directed to the sheriff or to any constable of the county," Ala. Code § 15-5-5, rendering the VCR and Smith's subsequent custodial statement inadmissible under Alabama's exclusionary rule.

At retrial, the state introduced, and the trial court admitted into evidence, both the VCR and Smith's custodial statement. Other than that, the State had little evidence supporting its case against Smith. The jury convicted Smith of capital murder. At the penalty phase, the jury rendered a verdict by a vote of 11 to 1 that Smith receive a sentence of life imprisonment without the possibility of parole. The trial court amended the sentencing order and imposed the death penalty.

Smith filed a petition for relief in the state circuit court, which he later amended. Among other things, he alleged that his trial counsel rendered ineffective assistance by failing to challenge the facial validity of the search warrant that led to the state's recovery of the VCR and ultimately to the custodial statement. The court dismissed the amended petition. The Alabama Court of Criminal Appeals reversed. *Smith v. State*, 160 So. 3d 40, 51–52 (Ala. Ct. App. 2010). On remand, the circuit court found that Smith's claim for ineffective assistance of counsel was precluded because it had been previously raised. On appeal, the Alabama Court of Criminal Appeals affirmed. Smith filed a petition for writ of certiorari in the Alabama Supreme Court, which the court denied.

Next, Smith filed a petition for writ of habeas corpus in the District Court for the Northern District of Alabama. *Smith v. Dunn*, 2019 WL 4338349, at *1 (N.D. Ala. Sept. 12, 2019). Smith made several claims, including ineffective assistance of counsel because his trial counsel did not challenge the search warrant as facially invalid under Alabama law. *Id.* at *26. The district court denied all of Smith's claims and dismissed the petition with prejudice. *Id.* at *52. It denied the ineffective-assistance claim on the basis that Smith could not establish prejudice because, even if the search warrant was invalid on its face under Alabama law, that would not constitute a Fourth Amendment violation, and, in any event, Alabama

5

law did not require that the search warrant be directed to a sheriff or constable of the issuing county. *Id.* at \*26.

This court granted Smith a certificate of appealability on the single issue of whether the district court erred in holding that Smith was not prejudiced by his trial counsel's failure to object to the validity of the search warrant even though it was directed to *any* sheriff of the state of Alabama. We review de novo the district court's order denying Smith's petition. *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1258 (11th Cir. 2016).

## II.

The right to counsel is a fundamental right, assuring the fairness and legitimacy of the criminal justice system. *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963). The Sixth Amendment guarantees criminal defendants "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). To prevail on an ineffective-assistance claim, the defendant must satisfy the two-pronged *Strickland* test: (1) that trial counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. A demonstration of the

second prong—prejudice—is made through a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Smith argues that he was prejudiced because his trial counsel failed to challenge the warrant as facially invalid under Alabama law. He explains that, since the language of the warrant violated sections 15-5-5 and 15-5-7 of the Alabama Code, the VCR and his subsequent statement to the police should have been suppressed. Had that evidence been suppressed, Smith contends, the State would not have been able to secure a conviction because those two pieces of evidence were crucial to the state's case.

However, Smith is only right about having been prejudiced if there is a reasonable probability that he would have prevailed on that challenge. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *cf. Kimmelman*, 477 U.S. at 375 ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). With that in mind, we consider the merit of Smith's claim that the

evidence should have been suppressed because the warrant plainly violated

Alabama law.

## III.

Alabama law governing the issuance of a search warrant provides:

> If the judge or the magistrate is satisfied of the existence
> of the grounds of the application or that there is probable
> ground to believe their existence, he must issue a search
> warrant signed by him and directed to the sheriff or to any
> constable of the county, commanding him forthwith to
> search the person or place named for the property specified
> and to bring it before the court issuing the warrant.

Ala. Code § 15-5-5.  Alabama law governing the execution of a search warrant

provides: "A search warrant may be executed by any one of the officers to whom it

is directed, but by no other person except in aid of such officer at his request, he

being present and acting in its execution."  Ala. Code § 15-5-7.  Read together,

"[t]hese statutes dictate that the 'sheriff' or a 'constable' of the particular 'county'

in which the warrant is issued will execute the warrant."  *Rivers v. State*, 406 So.

2d 1021, 1022 (Ala. Crim. App. 1981) (per curiam).

The issuing court directed the warrant to search Smith's Lauderdale County

home to all sheriffs of the state of Alabama, many of whom—i.e., all those outside

of Lauderdale County—were not authorized to execute search warrants in

Lauderdale County.  Smith maintains that the language in the warrant directing

unauthorized law-enforcement agents to search Smith's home is a direct violation

8

of the plain language of the statutes, especially in light of the Alabama Court of Criminal Appeals' decision in *Rivers*, 406 So. 2d 1021. In *Rivers*, the court invalidated a warrant directed to "Any [State Alcoholic Beverage Control (ABC)] Enforcement Agent." *Id.* at 1021. ABC agents are not among those authorized under sections 15-5-5 and 15-5-7 to execute search warrants without specific authorization from county law-enforcement officials. *Id.* at 1022. Therefore, "[s]ince the warrant was directed to 'any ABC agent' rather than a county official and was executed by ABC agents without the authority of county officials, the evidence procured under [the] search should not have been admitted at trial." *Id.* at 1023.

Smith contends that, likewise, since the warrant to search his home was directed to unauthorized officials outside of Lauderdale County, the evidence obtained through that search was inadmissible. The difference, though, between Smith's case and *Rivers*, is that in *Rivers* the warrant was directed *only* to unauthorized law-enforcement agents. And *only* the unauthorized agents in *Rivers* executed the warrant without the assistance or specific authorization from county officials. Here, the warrant was directed to a class of law-enforcement agents *including* those authorized. Even more, it can be inferred from the record that, because Investigator Ford went to the issuing court to obtain the warrant and signed the warrant, he was the officer designated to execute it. *See Usery v. State*,

668 So. 2d 919, 921 (Ala. Crim. App. 1995) ("[B]ecause Agent Brown applied for the warrant, we can infer from the record that he was the officer designated to execute it."). Additionally, the agents authorized to search Smith's home— Investigator Ford and his team from the Lauderdale County Sheriff's Department—took part in executing the search warrant.[5] All this to say that the warrant was directed to authorized county officials, who in turn executed the warrant. Consequently, we cannot find that the warrant to search Smith's home conflicts with *Rivers* or the requirements under sections 15-5-5 and 15-5-7 of the Alabama Code.

To be sure, the Alabama Court of Criminal Appeals has explained that sections 15-5-5 and 15-5-7 "are to be strictly construed for both the issuance and execution of search warrants in general." *Rivers*, 406 So. 2d at 1022. At the same time, the court has made clear that it "will not invalidate a search warrant by interpreting it in a hypertechnical rather than a common sense manner." *Usery*, 668 So. 2d at 922 (internal quotation marks omitted). This helps explain why Alabama courts have routinely upheld warrants directed to general classes of law-enforcement officers and have found none to be invalid on that basis. *E.g.*, *id.* at

---

[5] This fact highlights another difference between Smith's case and *Rivers*: There, the unauthorized ABC agents' "efforts could have been validated had they notified the proper county officials and obtained their assistance," but the agents did not do so. *Rivers*, 406 So. 2d at 1023. Here, even if the warrant was directed to unauthorized officials, Investigator Ford's assistance in executing the search warrant validated the effort. *See id.*

921 (warrant directed "TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA"); *Meade v. State*, 390 So. 2d 685, 688 (Ala. Crim. App. 1980) (warrant directed "TO ANY SHERIFF, CONSTABLE OR LAWFUL OFFICER OF THE STATE OF ALABAMA"); *Haynes v. State*, 277 So. 2d 372, 375 (Ala. Crim. App. 1973) (warrant directed "TO ANY SHERIFF OR LAWFUL OFFICER OF THE STATE OF ALABAMA"). Alabama courts have never required that, under sections 15-5-5 and 15-5-7 of the Alabama Code, search warrants be directed to particular officers. Alabama's caselaw binds our decision, and instructs that the general language of the warrant to search Smith's home conformed with Alabama's statutory requirements.

In any event, we note that even if the warrant violated Alabama law, the evidence would have been admissible pursuant to the good-faith exception to the exclusionary rule. The good-faith exception applies when an officer acting in objective good faith has obtained a search warrant from a court and acted within its scope. *United States v. Leon*, 468 U.S. 897, 920 (1984). The warrant—which neither the Colbert County nor the Lauderdale County law-enforcement agents had reason to believe was defective—directed law enforcement to search for the VCR, which is all that they obtained from the search. Accordingly, Smith does not have a meritorious claim that the VCR and subsequent statement were inadmissible because the warrant to search his home was facially invalid under Alabama law.

11

In sum, because Smith's claim that the warrant is facially invalid lacks merit under Alabama law, we find that Smith has not satisfied the prejudice prong of the *Strickland* test.  Consequently, we must agree with the district court that he has not shown ineffective assistance of counsel, and affirm.

**AFFIRMED.**